**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ASHOK ARORA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Honorable Jorge L. Alonso |
| | ) | |
| Diversified Consultants, Inc., | ) | Case No.:  1:20-cv-04113 |
| FMA Alliance Ltd, | ) | |
| First National Collection Bureau, Inc. | ) | Magistrate Judge Jeffrey T. Gilbert |
| T-Mobile USA, Inc., | ) | |
| John Does 1 through 50, | ) | |
| Defendants | ) | |

## PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO T-MOBILE'S MOTION TO DISMISS OR TRANSFER VENUE

Plaintiff Ashok Arora respectfully files this RESPONSE in opposition to defendant T-Mobile's Motion to Dismiss First Amended Complaint or Transfer Venue (Doc 24) ("Motion").

1.    **Defendant's argument: This Court lacks subject matter jurisdiction over the First Amended Complaint.** *Motion at 2.*

2.    **Response:** On February 1, 2021, Plaintiff filed his FIRST AMENDED COMPLAINT ("FAC") pursuant to Fed. R. Civ. P. 15(a)(1). *Doc 22*. The *FAC* names two more defendants: FMA Alliance Ltd ("FMA") and First National Collection Bureau, Inc. ("FNCB"). Plaintiff's claims against FMA and FNCB include federal Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 and Fair Debt Collection Practice Act ("FDCPA") 15 U.S.C. § 1692 et seq. claims, and stem from the wrong number phone calls they made to Plaintiff's cell phone. FMA and FNCB are not under bankruptcy proceedings as far as Plaintiff can tell. This court has

1

subject matter jurisdiction under 28 U.S.C. §1331, 47 U.S.C. § 227 *MIMS v. ARROW FINANCIAL SERVICES, LLC* (10-1195), and 15 U.S.C. § 1692k(d) over Plaintiff's federal claims against FMA and FNCB. The court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims against all Defendants.

3.      It is Plaintiff's intention to seek damages for all of his claims against DCI—which is currently under chapter 7 bankruptcy proceedings—from T-Mobile under Count 11 Civil Conspiracy claim. Claims against DCI are separately stated under Counts 1 – 3 to provide a clear and detailed description of those claims. In the event Plaintiff receives any value from DCI bankruptcy estate, Plaintiff's claim against T-Mobile will be reduced by that value.

4.      **Defendant's argument: To the extent the Count 11 includes DCI, it is enjoined by the TCPA Injunction Order.** *Motion at 6.*

5.      **Response:** Plaintiff's Count 11 Conspiracy claim against T-Mobile is based only in part on calls made by DCI. In part because the *FAC* names two more defendants—FMA and FNCB. Also, in part because Plaintiff's conspiracy claim against T-Mobile is meant to extend to all of the harassing intrusive wrong number calls Plaintiff has received over the last five (5) years, not just the calls from named defendants.

6.      Even if Plaintiff's conspiracy claim against T-Mobile were based solely on the calls made by DCI, it appears counterproductive that conspiracy claim against T-Mobile should be enjoined by the DCI TCPA/FDCPA injunction order (Doc 18).

7.      DCI is currently in chapter 7 bankruptcy proceedings. As T-Mobile points out in its *Motion*: the purpose of the stay "is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors". *Motion at 4*. Plaintiff's

conspiracy claim should allow Plaintiff to recover the full value of his claims against DCI from T-Mobile, and not have to scramble for DCI's assets.

> "The function of a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts." **Adcock v. Brakegate, Ltd., 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888, 894 (Ill. 1994) (Quoting W. Prosser, Torts § 46, at 293 (4th ed. 1971))**

> "parties to a civil conspiracy are jointly and severally liable for injuries to plaintiff" **Hoffman–La Roche, Inc. v. Greenberg, 447 F.2d 872, 874 n. 2 (7th Cir.1977)**

8. DCI's participation in this lawsuit is not necessary to determine whether T-Mobile participated in a conspiracy. Whether or not DCI participated in the conspiracy should also be discoverable through T-Mobile. DCI's participation in conspiracy may also be deduced from circumstantial evidence.

> "a conspiracy is rarely susceptible of direct proof; instead, it is established from circumstantial evidence and inferences drawn from evidence, coupled with commonsense knowledge of the behavior of persons in similar circumstances." **Adcock v. Brakegate, Ltd., 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888, 895 (Ill. 1994)(Quoting Majewski v. Gallina (1959), 17 Ill.2d 92, 99, 160 N.E.2d 783)**.

9. **Defendant's argument: Plaintiff does not allege that T-Mobile conspired with DCI, FNCB, or FMA. Indeed, Plaintiff does not allege any specific relationship, interaction, or agreement between T-Mobile and DCI, FNCB, or FMA.** *Motion at 8*.

3

10. **Response:** Circumstantial evidence shows that there was a conspiracy to make wrong number collection calls to Plaintiff's 3846 cell phone and that T-Mobile played a major role in it. *FAC ¶¶ 18-34, 63-75*. Whether there was a direct agreement between T-Mobile and collection agencies, or between T-Mobile and John Doe defendants and between John Doe defendants and collection agencies, is unknown at this time and is expected to be uncovered through discovery.

> "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with" ***Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002)**

> "a plaintiff is not required to allege facts with precision where the necessary information to do so is within the knowledge and control of the defendant and unknown to the plaintiff" ***Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888, 895 (Ill. 1994)**

> "the gist of a conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement" ***Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888, 895 (Ill. 1994)**

11. There are several possible scenarios. One possible scenario is that this was a criminal enterprise involving insiders from T-Mobile, collection agencies, and others. Another possible scenario—if the strange conduct of some of Plaintiff's former attorneys, continual attempts to intimidate Plaintiff, and other occurrences are any indication—is that the entire scheme was orchestrated by members of law enforcement under the color of law and T-Mobile agreed to do its part—even though it knew it was doing something illegal.

12.     **Defendant's argument:** **Plaintiff does not allege that T-Mobile committed a tortious act in furtherance of any agreement.** *Motion at 9.*

13.     **Response:** The tortious acts are the hundreds of wrong number calls Plaintiff has received over the past eleven (11) years. The argument that a conspirator itself must have performed a tortious act to be liable for a conspiracy has been rejected by the Illinois Supreme Court.

> "We also reject [Defendant]'s implicit claim that to state a cause of action for civil conspiracy, a plaintiff must allege and prove that [Defendant] itself, as opposed to one of the conspirators, performed an unlawful or tortious act in furtherance of the conspiracy. … to adopt such a requirement would deprive the plaintiff of one of the fundamental benefits of a conspiracy claim, that is, that once a conspiracy is formed, all of its members are liable for injuries caused by any unlawful acts performed pursuant to and in furtherance of the conspiracy".
> *Adcock v. Brakegate, Ltd.*, **164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888, 895 (Ill. 1994)**

14.     T-Mobile did perform unlawful acts in furtherance of the conspiracy. T-Mobile removed Plaintiff's name from his account, intentionally disseminated false caller ID/telephone directory information for ten (10) years for his 3846 cell phone number, and created a fake subscriber record to make it appear that the number belonged to Elizabeth Adams. *FAC ¶¶ 65-67, 71-73.* These acts appear to be unlawful on the face and in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 IL 505):

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false

pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby" **815 IL 505/2**.

15.     T-Mobile unlawful acts helped perpetuate the conspiracy. Whenever Plaintiff called the callers for Elizabeth Adams or Elizabeth G Adams back to tell them they were calling a wrong number, they likely saw "Elizabeth Adams" on their caller id which gave them an excuse to keep calling.

16.     **Defendant's argument: Plaintiff has failed to state a claim for hate crimes against T-Mobile. Plaintiff does not allege that T-Mobile committed any of the enumerated predicate offenses under the Illinois Hate Crimes Act.** *Motion at 11.*

17.     **Response:**  T-Mobile may be directly or vicariously responsible for the acts of others. Only T-Mobile, or its employee, could have inserted the September 11 date in the T-Mobile subscriber record which appears to be a fake anyway. The exact relationship between T-Mobile and others with respect to calls they made to Plaintiff's 3846 cell phone is unclear at the moment. Given T-Mobile's active participation in the conspiracy, T-mobile certainly aided and abetted the crime. It may have also placed accounts with collection agencies and provided Plaintiff's 3846 cell phone number as the number to call.

18.     **Defendant's argument: The court should transfer this matter to the Middle District of Florida in the interest of justice.**

6

19.    **Response:** Given that DCI is in chapter 7 bankruptcy proceedings, and given that DCI's liabilities likely far exceed its assets, Plaintiff may recover only small a fraction of his claim, if any at all, from DCI's bankruptcy estate. Given that there are far larger claims against DCI than Plaintiff's claim against DCI, it appears highly unlikely that DCI, or its bankruptcy trustee, will choose to defend against Plaintiff's TCPA claim. The transfer of this action to Bankruptcy Court for the Middle District of Florida will achieve nothing more than delay the resolution of Plaintiff's claims against T-Mobile and other defendants.

## CONCLUSION

i)    This court has jurisdiction over Plaintiff's complaint.

ii)   T-Mobile is liable under Plaintiff's conspiracy claim for all of the damages caused by bankrupt DCI's tortious acts. Therefore, transfer of venue to the Bankruptcy Court for the Middle District of Florida is unwarranted.

WHEREFORE, Plaintiff respectfully requests the court to deny defendant T-Mobile's Motion to Dismiss or Transfer Venue.

Dated: February 22, 2021

Respectfully Submitted,

/s/ Ashok Arora_____
Ashok Arora, Pro Se
869 E Schaumburg Rd 217
Schaumburg, IL 60194
Tel: 224-622-3846

**CERTIFICATE OF SERVICE**

I, Ashok Arora, hereby certify that on February 22, 2021, I filed the foregoing

PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO T-MOBILE'S

MOTION TO DISMISS OR TRANSFER VENUE with the Clerk of the Court using the

CM/ECF system which will send the notification of such filing to all attorneys of record.


/s/ Ashok Arora_____
Ashok Arora
*Pro Se Plaintiff*